Michael A. Caddell
Cynthia B. Chapman
Gregory K. Evans
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
Telephone 713.751.0400
Facsimile: 713.751.0906
mac@caddellchapman.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | |
|---|---|
| HENRY PATEL,<br><br>                Plaintiff,<br><br>vs.<br><br>UPONOR CORPORATION, a Finnish corporation; UPONOR GROUP, a Finnish corporation; UPONOR, INC., an Illinois corporation; WIRSBO COMPANY, an Illinois company; UPONOR WIRSBO COMPANY, an Illinois company,<br><br>              Defendants. | **COMPLAINT FOR DAMAGES AND OTHER RELIEF**<br><br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, HENRY PATEL, individually and in his representative capacity on behalf of similarly-situated homeowners residing in Texas, and hereby complains, alleges, and states as follows:

# I.

## INTRODUCTION

1.          This is a class action for damages and other relief brought pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly-situated owners of residences in Texas who have suffered damage as a result of owning homes with potable-water-delivery systems that utilize defective high-zinc-content brass Wirsbo/Uponor-brand fittings and attendant high-zinc-content brass plumbing components limited to: ball valves, pressure reducing valves, shut-off valves, angle stops, isolation valves, gate valves, recirculation pumps, swing check valves, ice box shut-off valves, washing machine box shut-off valves, and hose bibs.

# II.

## PARTIES

2.          HENRY PATEL ("Plaintiff") is an individual residing at all relevant times at 4803 102nd Street, Lubbock, Texas, 79424.

3.          Plaintiff brings this action pursuant to the authority granted by Federal Rule of Civil Procedure 23 (hereafter, "Federal Rule 23").

4.          Plaintiff has standing to bring all of the claims set forth in this Complaint on behalf of himself and as representative of the class of similarly-situated homeowners residing in Texas pursuant to the authority granted by Federal Rule 23.

5.          Plaintiff has standing to assert claims for residences that contain or contained potable-water-delivery systems utilizing defective high-zinc-content yellow-brass Wirsbo-brand fittings and attendant high-zinc-content brass plumbing components in his representative capacity on behalf of all class members (hereafter, the "Class Members") for these common defects.

6.        The "Wirsbo Homes" are all residences in Texas that contain or contained potable-water-delivery systems utilizing defective high-zinc-content brass Wirsbo/Uponor-brand fittings and attendant high-zinc-content brass plumbing components.   The defective plumbing systems and components have prematurely failed due to dezincification, which is a well-known form of corrosion attack to the high-zinc-content brass components.   These defects have caused resulting damage to property, including but not limited to loss of structural integrity and/or strength of the brass components, weeping, leaks, blockages, restriction and/or loss of water flow and/or pressure, loss of use and function of the plumbing system and related improvements and/or appliances provided by others, including the leaching of lead into the homes' potable-water-delivery systems, resultant damage to the Wirsbo Homes and the work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith.   These damages and others are expected to increase over time as the defective systems and components continue to corrode.

7.        Plaintiff is informed, believes, and thereupon alleges that the following Defendants are/were responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale, and warranting of potable-water-delivery systems utilizing defective high-zinc-content brass Wirsbo/Uponor-brand fittings and attendant high-zinc-content brass plumbing components in Texas in the Wirsbo Homes, and proximately caused the injuries and damages herein alleged:

a.        Defendant UPONOR CORPORATION is a Finnish corporation that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein,

3

both directly and indirectly, by and through its agents and collective business enterprise partners, including, but not limited to UPONOR, INC.

b.        Defendant UPONOR GROUP is a Finnish corporation that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

c.        Defendant UPONOR, INC. is an Illinois corporation that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein.   UPONOR, INC. is the agent of its parent, UPONOR CORPORATION, with whom it acted as a single, collective and common business enterprise.

d.        Defendant UPONOR WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

e.        Defendant WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

f.        Defendants UPONOR CORPORATION; UPONOR GROUP; UPONOR,

4

INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY are hereinafter collectively referred to as the "Uponor Defendants."

i.   The Uponor Defendants form a worldwide group or conglomerate of interrelated companies, with UPONOR CORPORATION at the apex, that are commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for the construction and public utility industries.

ii. UPONOR CORPORATION'S subsidiaries, UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, perform functions that are compatible with and assist UPONOR CORPORATION in the pursuit of its own business.

iii. But for the existence of its subsidiaries, UPONOR CORPORATION would have to undertake to perform substantially similar services as those undertaken by its subsidiaries.  UPONOR CORPORATION exerts control over its subsidiaries that is so pervasive and continual that they may be considered the agents, members alter egos, or instruments of one another and especially their apex company, UPONOR CORPORATION, regardless of the maintenance of corporate formalities.

## III.

## JURISDICTION AND VENUE

8.        This Court has jurisdiction in this matter, and venue is proper, because this Complaint arises from Defendants' design, development, testing, manufacture, distribution,

supply, marketing, sale, and warranting of the defective high-zinc-content brass Wirsbo/Uponor-brand fittings utilized in residential potable-water-delivery systems and attendant high-zinc-content brass plumbing components in Texas.

9.          This Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(1) because Plaintiff is a Texas resident and all defendants reside outside Texas, and the value of the claims here exceeds $75,000.  Further, the Court has jurisdiction pursuant to 1332(d)(2)(A) because the value of the claims here exceeds $5,000,000 and the parties are diverse.

10.         Venue is proper in this Court because at all relevant times Plaintiff has resided in Lubbock, Texas within Lubbock County.

11.         This Court has personal jurisdiction over UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY because their activities in Texas have been systematic, continuous, and substantial.

12.         This Court has personal jurisdiction over the non-North American Uponor Defendants, UPONOR CORPORATION and UPONOR GROUP,[1] because they are the alter egos of their subsidiaries and/or their subsidiaries are their members, agents, and/or predecessors-in-interest.  The Uponor Defendants act as a single, collective, and common business enterprise for UPONOR CORPORATION'S own business.  There is such a unity of ownership and interest between the non-North American Uponor Defendants and their subsidiaries that the ownership and interest of one is inseparable from the other.  Adherence to the corporate fiction would sanction fraud and promote injustice.  The non-North American Uponor Defendants exert control over their subsidiaries that is so pervasive and continual that

---

[1] The non-North American Uponor Defendants' subsidiaries include: UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY.

the subsidiaries may be considered their agents, members, or instruments.  But for this important relationship, the non-North American Uponor Defendants would have to undertake to perform substantially similar services as their subsidiaries.

## IV.

## CLASS ACTION ALLEGATIONS

13.        A class action is alleged pursuant to Federal Rule 23.  The class consists of all similarly situated Texas homeowners whose residences contain the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery systems and attendant high-zinc-content brass plumbing components.  The class is so numerous that joinder would be impractical and disposition of the Class Members' claims in a class action is in the best interests of the parties and judicial economy.

14.        This action involves questions of law and fact common to each member of the class, in that all members of the proposed class have suffered damages as a result of the installation of defective high-zinc-content brass Wirsbo/Uponor-brand fittings and potable-water-delivery systems and attendant high-zinc-content brass plumbing components in their homes or in their members' homes.

15.        The claims of Plaintiff and relief herein sought are typical of the claims and relief that could generally be sought by each member of this proposed class.

16.        Plaintiff can fairly and adequately protect the interests of all members of the proposed class.   The Wirsbo Homes all contain defective high-zinc-content brass Wirsbo/Uponor-brand fittings and potable-water-delivery systems and attendant high-zinc-content brass plumbing components.

17.        Prosecution of separate actions by individual members of the proposed class

would create a risk of inconsistent or varying adjudications with respect to individual members of the class and thus establish incompatible standards of conduct for the party or parties opposing the class.

18.       Plaintiff's attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class.

## V.

## GENERAL ALLEGATIONS

19.       Plaintiff is informed, believes, and thereupon alleges that at all times relevant herein, Defendants were the officers, agents, employees, representatives, affiliates, members, predecessors, successors-in-interest and/or alter egos of one another in doing the things alleged herein and in so doing were acting in the scope of their respective authority and agency.

20.       The Wirsbo/Uponor-brand plumbing system that was installed and used in the Wirsbo Homes is a PEX-type plastic pipe product that is designed to distribute potable water throughout these homes. It is made of cross linked polyethylene. Polyethylene, referred to as PE, is the raw material and the X refers to the manufacturing process of cross linking the polyethylene across its molecular chains. The Wirsbo/Uponor-brand PEX pipe connects to other pipe and plumbing components (including, but not limited to attendant high-zinc-content brass valves, pumps, bibs, and regulators) via Wirsbo/Uponor-brand high-zinc-content brass fittings.

21.       Brass is an alloy primarily composed of copper and zinc. High-zinc-content brass Wirsbo/Uponor-brand fittings and other attendant high-zinc-content brass plumbing components that were installed and are used as part of the plumbing systems in the Wirsbo Homes are corroding due to a well-known chemical reaction called dezincification. "High-zinc-content" means having a zinc content of greater that fifteen percent (15%) and/or not otherwise treated to

8

resist dezincification. Dezincification is a form of selective leaching or removal of an element (zinc) from the brass alloy by corrosion. As a result, the high-zinc-content brass fittings and attendant high-zinc-content brass plumbing components become porous, brittle, and blocked with zinc oxide and/or zinc carbonate, inevitably leading to restricted water flow and/or pressure, reduced material strength, corrosion, cracks, and leaks. Therefore, the installation and use of high-zinc-content brass fittings and attendant high-zinc-content brass plumbing components in the Wirsbo Homes causes substantial injury/damage to the Association and its members by damaging and impairing the ability of the plumbing system to effectively operate as a potable-water-delivery system.

22.     Plaintiff is informed, believes, and thereupon alleges that the above-referenced high-zinc-content brass plumbing deficiencies and defective conditions have proximately caused damage to Plaintiff and all members of the Class. These damages include, but are not limited to: dezincification corrosion, leaking lead into the potable-water-delivery system, plumbing blockages, reduced water flow and/or pressure, loss of function, loss of structural integrity, cracks, weeps, leaks, system failures, and damage to other property, appliances, and components, including the quality of the potable water delivered through the system by the leaching of lead into the homeowners' water. Plaintiff is informed and believes that these damages are pervasive and exist in the Wirsbo Homes.

23.     The Wirsbo Homes may have suffered damages in other ways and to other extents not presently known to Plaintiff, and not specified above. Plaintiff reserves the right to amend this Complaint upon discovery of any additional damages not referenced herein, and/or to present evidence of the same at the time of trial of this action.

24.     Plaintiff alleges and asserts that his claims have all been brought in a timely

manner and within the statute of limitations and repose periods, if applicable.

25.        Plaintiff seeks recovery for injuries and/or damages to property.  Plaintiff's and the Class Members' damages exceed $75,000.

## VI.

## FIRST CAUSE OF ACTION

**(Breach of Implied Warranties of Fitness for Particular Purpose, Merchantability, Quality, and Workmanship)**

26.        Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

27.        Plaintiff is informed, believes, and thereupon alleges that Defendants were engaged in and are responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale, and warranting of defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery systems and attendant high-zinc-content brass plumbing components installed and used in residences constructed in Texas, and that Plaintiff and the Class Members were the intended beneficiaries and/or the intended third-party beneficiaries of each and every such act and/or warranty.

28.        By designing, manufacturing, marketing, and supplying the high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery systems and attendant high-zinc-content brass plumbing components in the Wirsbo Homes, Defendants expressly and/or impliedly warranted that said systems and components were free of defective materials, were of merchantable quality, were suitable and fit for the ordinary purpose for which said systems and components were intended, were safe, were proper, and constructed in a workmanlike manner. Defendants also actively sought to distribute their products in this marketplace by making certain

10

representations and warranties about their plumbing system to national, state, and/or local agencies such as building authorities where the product system was marketed and sold as approved for use in accordance with national, state, and/or local laws.  As a result of these representations and warranties, national, state, and/or local agencies approved the high-zinc-content brass Wirsbo/Uponor-brand plumbing systems and fittings and attendant high-zinc-content brass plumbing components for use, conveying the defective information and warranties to Plaintiff and the Class Members.

29.        Defendants impliedly warranted that the high-zinc-content brass Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass plumbing components were fit for the particular purpose they were intended, and that said systems and components would perform in a defect-free manner.

30.        Plaintiff is informed, believes, and thereupon alleges that Defendants breached said warranties by failing to adequately and properly develop, design, manufacture, assemble, distribute, market, sell, warrant the high-zinc-content brass Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass plumbing components in the Wirsbo Homes and/or by failing to provide defect-free plumbing systems and attendant plumbing components in the Wirsbo Homes.

31.        As a direct and proximate result of the breaches of the implied warranties by Defendants, Plaintiff and the Class Members have been, and will continue to be, caused damage as more fully described herein including, but not limited to product failures, dezincification corrosion, leaks, blockages, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the Wirsbo Homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials),

resultant damage to water quality, including leaching of lead from the high-zinc-content brass fittings into the potable-water-delivery systems of the Wirsbo Homes, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

32.        As a further direct and proximate result of the breaches of the implied warranties by Defendants, Plaintiff and the Class Members have suffered damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Wirsbo Homes to prevent further damage and to restore the Wirsbo Homes to their proper habitable condition.  Plaintiff and the Class Members will establish the amount of their damages at the time of trial according to proof.

33.        Plaintiff incorporates the prayer for relief as though set forth herein.

## VII.

## SECOND CAUSE OF ACTION

### (Breach of Express Warranties)

34.        Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

35.        The Uponor Defendants did prepare, distribute, and provide express warranties as part of the Wirsbo/Uponor-brand potable-water-delivery systems and fittings.  These warranties provide coverage for certain defects in these plumbing systems and components.  These warranties were intended for use by customers and end-users of the plumbing systems, including Plaintiff and their members.

36.        The Uponor Defendants expressly warranted that the high-zinc-content brass Wirsbo/Uponor-brand plumbing systems were developed, designed, manufactured, and distributed in conformance with any and all applicable safety standards, building and product codes, standards, and regulations.  In so doing, the Uponor Defendants expressly warranted that their plumbing system was fit, sound and safe, and would remain so for a reasonable period of time.

37.        Plaintiff is informed, believes, and thereupon alleges that the express warranties made and used by the Uponor Defendants have at all relevant times been written in the form of, by example, and without limitation: product catalogues, instruction manuals, ASTM and/or other codes or standards, specifically including NSF standards and/or codes, advertising flyers, brochures, sales literature, promotional packages, signs, magazine and newspaper articles and advertisements, all designed to promote the introduction and ultimate sale of the defective high-zinc-content brass Wirsbo/Uponor-brand plumbing system in this marketplace, and to promote the belief that this system had been properly developed, designed, manufactured, and distributed for safe and effective use in this jurisdiction.

38.        As a direct and proximate result of the breaches of the express warranties by the Uponor Defendants as herein alleged, Plaintiff and the Class Members have been, and will continue to be, caused damage as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, blockages, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the Wirsbo Homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including

the leaching of lead into the Wirsbo Homes' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

39.         As a further direct and proximate result of the breaches of the express warranties by the Uponor Defendants as herein alleged, Plaintiff and the Class Members have suffered injuries and/or damages to property in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Wirsbo Homes to prevent further damage and to restore the Wirsbo Homes to their proper condition.  Plaintiff and their members will establish the amount of their damages at the time of trial according to proof.

40.         Plaintiff incorporate the prayer for relief as though set forth herein.

## VIII.

### THIRD CAUSE OF ACTION

### (Negligence, Including Negligent Misrepresentation, Failure to Warn/Instruct)

41.         Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

42.         Plaintiff alleges that Defendants knew or should have known that the high-zinc-content brass Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass plumbing components were not properly or adequately designed, tested, engineered, marketed, distributed, marked, labeled, represented (including instructions and warnings) such that Plaintiff and the Class Members have been substantially damaged or injured thereby, and that Defendants knew or should have known that the Wirsbo/Uponor-brand plumbing systems and attendant

14

high-zinc-content brass plumbing components are defective because they are not and were not developed, designed, manufactured, assembled, constructed, plumbed, distributed, marketed, sold, and/or warranted in accordance with applicable laws, codes, and/or standards of care.

43.     Plaintiff alleges that Defendants were under a duty to exercise ordinary care to avoid reasonably foreseeable harm to Plaintiff and the Class Members, and knew or should have foreseen with reasonable certainty that Plaintiff and/or the Class Members would suffer injury and/or monetary damages as set forth herein by using, specifying for use, and/or installing the Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass plumbing components in the Wirsbo Homes.

44.     Plaintiff is informed, believes, and thereupon alleges that Defendants breached said duty by negligently designing, developing, manufacturing, distributing, marketing, and/or selling unreasonably unsafe and defective plumbing systems and attendant parts, which were installed and used in the Wirsbo Homes.

45.     Defendants' negligence includes the failure to provide adequate information to local building code authorities.  Plaintiff, the Class Members, and/or their predecessors-in-interest are members of the class of persons that the building codes and ordinances were designed to protect.  Such violations are negligence per se on the part of Defendants.

46.     Defendants' negligence includes misrepresentations about the defective plumbing systems and components given to Plaintiff, the Class Members, and/or their representatives, upon which they relied to their detriment and damage.

47.     As a direct and proximate result of the Defendants' negligence, Plaintiff and the Class Members have been, and will continue to be, caused damage as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced

material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, loss of use and function of the plumbing system and related improvements and/or appliances provided by others, resultant damage to the Wirsbo Homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the Wirsbo Homes' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith.   These damages and others are expected to increase over time as the defective systems and components continue to fail.

48.        As a further direct and proximate result of Defendants' negligence, Plaintiff and the Class Members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Wirsbo Homes to prevent further damage and to restore the Wirsbo Homes to their proper habitable condition.   Plaintiff and the Class Members have also been compelled to resort to litigation against Defendants to judicially resolve their differences.

49.        Plaintiff and the Class Members will establish the amount of their damages at the time of trial according to proof.

50.        The damages and/or injuries suffered by Plaintiff and the Class Members, are of the kind that ordinarily do not occur in the absence of negligence.

51.        The damages and/or injuries suffered by Plaintiff and the Class Members were caused by an agency or instrumentality over which Defendants had the exclusive right or control, and which was not mishandled or otherwise changed after Defendants relinquished control.

52.        The damages and/or injuries suffered by Plaintiff and/or the Class Members were

not due to any voluntary action on the part of Plaintiff and/or the Class Members.

53.        Defendants have superior knowledge and/or are in a better position to explain the damages and/or injuries suffered by Plaintiff and the Class Members.

54.        Plaintiff incorporates the prayer for relief as though set forth herein.

## IX.

## FOURTH CAUSE OF ACTION

## (Strict Products Liability)

55.        Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

56.        At all relevant times herein, Defendants, developed, designed, manufactured, supplied, distributed, marketed, sold, warranted defective plumbing systems and component parts in the Wirsbo Homes, notably defective high-zinc-content brass Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass plumbing components, that have prematurely failed due to dezincification corrosion, so as to cause the Wirsbo Homes to be in a dangerous, defective, unsafe, and unfit condition for habitation.

57.        Defendants knew and/or should have known and expected that their products would be placed in the stream of commerce and on the market, and would reach Plaintiff and the Class Members without substantial change and would be installed in the same defective condition in which they were originally designed, manufactured, and sold.

58.        At all times relative hereto, Defendants owed a duty of reasonable care to the Plaintiff and the Class Members in the design, development, manufacture, distribution, marketing, sale, use of materials in the Wirsbo Homes.

59.        Defendants breached their duties by failing to adequately and properly design,

develop, manufacture, distribute, market, warn, and sell the plumbing systems and component parts in the Wirsbo Homes in that said system and component parts are defective and/or otherwise unsuitable for use, resulting in failures and damage to Plaintiff and the Class Members. For example, but not limitation, the plumbing systems and components have failed (dezincified), caused damage to other property, and caused blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, stress, corrosion, cracking, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, leaching of lead into the Wirsbo Homes' potable-water-delivery systems, and other damages.  Defendants had prior notice and knowledge of these defects and potential damages, and failed to act timely and accordingly to remedy these defects.

60.      As a direct and proximate result of the foregoing, Plaintiff and the Class Members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Wirsbo Homes to prevent further damage and to restore the Wirsbo Homes to their proper habitable condition.  Plaintiff and the Class Members will establish the amount of their damages at the time of trial according to proof. As a further direct and proximate result of the foregoing, Plaintiff and the Class Members have been compelled to resort to litigation against Defendants to judicially resolve their differences.

61.      Plaintiff' and the Class Members' damages and/or injuries, are sufficient circumstantial evidence of proof of the existence of a defect or an unreasonably dangerous condition, and evidence of a defect or an unreasonably dangerous condition, is properly inferred under the doctrine of res ipsa loquitur.

62.      Plaintiff incorporates the prayer for relief as though set forth herein.

18

## X.

## FIFTH CAUSE OF ACTION

### (Alter Ego)

63.        Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

64.        Plaintiff is informed, believes, and thereupon alleges that UPONOR CORPORATION is the parent or grandparent corporation of UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY.  These Uponor Defendants form, with UPONOR CORPORATION at the apex, a worldwide group of interrelated companies that are commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for the construction and public utility industries.

65.        Plaintiff is informed, believes, and thereupon alleges that UPONOR CORPORATION exercises complete control over the activities and operations of its subsidiary/child entities, UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, to the extent that these subsidiary/child entities are the mere alter egos of their parent, UPONOR CORPORATION.

66.        Plaintiff is informed, believes, and thereupon alleges that the unity of interest and ownership between the Uponor Defendants is such that the subsidiary/child entities are inseparable from their parent, UPONOR CORPORATION.

67.        To recognize these subsidiary/child entities as viable corporate entities separate and apart from UPONOR CORPORATION and thus insulate UPONOR CORPORATION from liability to Plaintiff would, under these circumstances, sanction injustice and operate as a fraud

against Plaintiff.  Plaintiff should be entitled to pierce the corporate veil of the subsidiary/child entities behind which UPONOR CORPORATION has attempted to hide in committing its acts and omissions that have and will continue to damage Plaintiff and the Class Members.

68.         Plaintiff incorporates the prayer for relief as though set forth herein.

## XI.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.         For the cost to repair and/or replace the defective plumbing systems and products;

2.         For costs and expenditures to correct, cure, or mitigate injustices and damages caused or that will be caused by the defects and/or deficiencies as set forth herein;

3.         Economic losses associated with the defects and/or deficiencies, including loss of use, relocation, and alternative housing;

4.         For an award of pre-judgment interest on all monetary damages, fees, and costs awarded in this action;

5.         For such relief as the Court may deem necessary and appropriate under the circumstances.

## XII.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 23rd day of January, 2012.


Respectfully submitted,


By:____*s/ Michael A. Caddell*_____
CADDELL & CHAPMAN
Michael A. Caddell
TX State Bar No. 03576700
Cynthia B. Chapman
TX State Bar No. 00796339
Gregory K. Evans
TX State Bar No. 24002065
1331 Lamar, #1070
Houston TX 77010
Telephone: 713.751.0400
Facsimile: 713.751.0906
mac@caddellchapman.com


LAW OFFICES OF TRAVIS S. WARE
Travis S. Ware
TX State Bar No. 20864500
1915 Broadway Avenue
Lubbock, TX   79401
Telephone:  806.763.5044
Facsimile:  806.763.7536

COUNSEL FOR PLAINTIFFS